**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SAMUEL DYWAYNE WILLIAMS,** | : | |
| | : | |
| **Petitioner** | : | |
| | : | **CIVIL NO. 3:CV-09-2479** |
| **v.** | : | |
| | : | **(Judge Caputo)** |
| **JEROME WALSH, et al.,** | : | |
| | : | |
| **Respondents** | : | |

**M E M O R A N D U M**

**I.     Introduction**

Petitioner Samuel Dywayne Williams, a state inmate currently incarcerated at the Pine Grove State Correctional Institution in Indiana, Pennsylvania, commenced this action by filing a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1, Pet.)  Mr. Williams is challenging his 2002 conviction and sentence in the Court of Common Pleas of Dauphin County, Pennsylvania, by asserting claims of trial court error and ineffective assistance of counsel.  For the reasons that follow, the petition will be denied.

**II.     Background**

On October 11, 2002, Mr. Williams was found guilty of Unlawful Delivery of a Controlled Substance and Criminal Conspiracy following a jury trial in the Dauphin County court.  The Pennsylvania Superior Court summarized the relevant facts as follows:

Williams was found guilty of participating in a sale of crack cocaine to an undercover officer.  An undercover police officer ("Officer Muldrew") from York County began working with the Harrisburg Police Department in September, 2001 on an investigation of a group of New York drug dealers. Muldrew was looking into the sale of drugs at the Boutselis Bar in Harrisburg, Pennsylvania. Muldrew had successfully made multiple purchases of crack cocaine from several dealers in and around the bar. On September 24, 2001, Muldrew walked into the bar looking to make a purchase. Having no luck, he was about to leave when he was stopped by a third party, David Richardson.  Richardson offered to sell Muldrew $20 worth of crack cocaine from his dealer inside the bar.  Muldrew went to his van to wait for Richardson to deliver the cocaine.  Richardson came to the van and sold Muldrew two rocks of crack cocaine.

After the deal was completed, Richardson bragged to Muldrew about his dealer getting the "good stuff."  Muldrew agreed to buy another $20 worth of cocaine based on this information.  Richardson had no additional cocaine on his person, so both parties made their way back to the bar to obtain the cocaine.  Upon reaching the front entrance, the pair encountered the defendant, Samuel D. Williams. Richardson began quietly conversing with Williams so that Muldrew could not hear.  During the conversation, a car drove past on the street causing Williams to retreat back into the bar.  Williams stated that the police were in the area and that he believed an undercover police car had just passed.  Officer Muldrew testified that Williams and Richardson resumed the conversation and exchanged an unseen object.[1] Richardson talked only to Williams during

---

[1]  In its memorandum addressing Mr. Williams' appeal from the order denying his

PCRA petition, the Pennsylvania Superior Court added here:

Specifically, Officer Muldrew  testified that he observed Richardson and Williams engage in a "slight exchange of hand[.]" N.T., 10/11/02, at 18.  He also testified that he "didn't see any items passed back and forth" but that immediately after the "slight exchange of hands[,]" Richardson "tells me he has what I need."  *Id.*

(Doc. 15-9, ECF p. 3, n.2, Ex. E, *Commonwealth v. Williams*, 1119 MDA 2008 (Pa. Super.

Ct. Apr. 23, 2009)).

> this time.  Richardson informed Muldrew that he was in possession of the drugs and could make the deal right there.  Muldrew offered Williams the $20, and Williams then nodded toward Richardson.  Richardson dropped the drugs on the floor.  Muldrew picked up the drugs off the floor and gave Richardson $20.
>
> Williams was arrested on October 19, 2001.  At trial, Richardson testified that Williams was not involved in the sale of drugs on the day in question.  However, on October 11, 2002, a jury convicted Williams of unlawful delivery of a controlled substance and criminal conspiracy.

(Doc. 15-5, ECF pp. 4-10, Ex. A, *Commonwealth v. Williams*, No. 1926 MDA 2003 (Pa. Super. Ct. Jun. 25, 2004) (non-precedential)).  On November 21, 2002, the trial court sentenced Mr. Williams to a term of imprisonment of forty-two (42) to eighty-four (84) months.

Mr. Williams filed a timely direct appeal to the Pennsylvania Superior Court, which affirmed the criminal judgment by opinion dated June 25, 2004.  (*Id*.)  On May 4, 2005, Mr. Williams filed a timely *pro se* petition for collateral relief under Pennsylvania's Post Conviction Relief Act (PCRA), 42 PA. CONS. STAT. ANN. §§ 9541 *et seq*.  The trial court, now acting as PCRA court, dismissed the petition without a hearing on January 30, 2006.  (*See* Doc. 15-8, ECF p. 4, Ex. C, *Commonwealth v. Williams*, 449 MDA 2006 (Pa. Super. Ct. Mar. 13, 2007) (non-precedential)).  Williams appealed *pro se*, contending that appointed post-conviction counsel erred in filing a "no merit" letter and in seeking to withdraw.  (*See id*.)  He also argued that the trial court had abused its discretion during its charge to the jury.  (*See id*.)  On March 13, 2007, the Pennsylvania Superior Court vacated the PCRA court's order and remanded the matter for further proceedings, directing that new

-3-

post-conviction counsel be appointed to review Mr. Williams' case to determine whether he had raised any non-frivolous issues.  (*Id.*)  On remand, and without holding a hearing, on June 3, 2008, the PCRA court again denied Mr. Williams' PCRA petition.  (Doc. 15-8, ECF pp. 47-54, Ex. D, *Commonwealth v. Williams*, 545 CR 2002 (Dauphin Ct. Com. Pl. Jun. 3, 2008)).  On April 23, 2009, the Superior Court affirmed the denial of PCRA relief.  (Doc. 15-9, ECF pp. 2-12, Ex. E, *Commonwealth v. Williams*, 1119 MDA 2008 (Pa. Super. Ct. Apr. 23, 2009) (non-precedential)).  Further, Mr. Williams' timely petition for allowance of appeal was denied by the Pennsylvania Supreme Court on October 26, 2009.  (Doc. 15-9, ECF p. 28, Ex. G, *Commonwealth v. Williams*, 386 MAL 2009 (Pa. Oct. 26, 2009)).

On December 15, 2009, Mr. Williams timely filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1, Pet.)  He also filed a supporting memorandum of law.  (Doc. 2, Mem. in Supp. Pet. for Writ of Habeas Corpus.)  In the petition, Mr. Williams raised the following claims for relief: (1) the trial court committed misconduct during its charge to the jury by prejudicially mischaracterizing the evidence; and (2) trial counsel rendered constitutionally ineffective assistance in failing to object to, or seek a curative instruction for, the trial court's improper conduct during the jury charge.  (Doc. 1.)  In addition to filing his petition and supporting memorandum of law, Mr. Williams filed a motion to stay these proceedings in order to exhaust his state court remedies as to Claim One raised in his petition.  (Doc. 3, Mot. to Stay.)  After the parties briefed the motion to stay, (*see* Docs. 3 and 13), by order issued on September 21, 2010, the court denied the motion on the basis that Mr. Williams could not show good cause for his

failure to exhaust his state court remedies in a timely fashion.  (*See* Doc. 14, Order.)

Mr. Williams appealed the court's decision to the United States Court of Appeals for

the Third Circuit.  (*See* Doc. 18, Notice of Appeal.)  On February 11, 2011, the Third

Circuit summarily affirmed our order denying the motion to stay these proceedings.

(*See* Doc. 21, *Williams v. Walsh*, No. 10-4080 (3d Cir. Feb. 11, 2011)).

        In the court's September 21, 2010 order denying Mr. Williams' motion to stay,

the Respondents were directed to file a response to the petition.  (*Id.*)  Respondents

filed their response on October 8, 2010.  (Doc. 15, Respts' Answer to Pet. for Writ of

Habeas Corpus.)  Mr. Williams did not file a reply brief.  However, on May 31, 2013,

Mr. Williams filed a motion to amend his habeas corpus petition.  (Doc. 33.)  In the

motion, Mr. Williams noted that "[n]ew state law and federal case law is available

since the filing of my habeas corpus" petition.  (*Id.*)  On October 20, 2013, Mr.

Williams filed a second motion to amend his habeas petition.  (Doc. 35.)  In that

motion, Mr. Williams acknowledged that he has filed a mixed petition in this matter

and claimed he was not "afforded the right to delete the unexhausted issue" from his

petition.  (*Id.*)  By memorandum and order dated March 13, 2014, the court denied

Mr. Williams' motions to amend his habeas petition.  (Docs. 38 - 39.)  Mr. Williams

has not appealed this order, and thus this matter is now ripe for disposition.


**III.    Discussion**

        In his petition, Mr. Williams raises the following claims as grounds for relief:

                (1)  Did  the  trial  court  violate  the  [Mr.  Williams']
                Constitutional right to a fair trial by an impartial judge or

-5-

jury, and due process of law, by invading the province of the jury, giving a prejudicial and unbalanced charge to the jury in favor of the Commonwealth[, . . . and, (2) Was [Mr. Williams'] trial counsel Constitutionally ineffective for not objecting to the trial court's prejudicial and unbalanced charge to the jury, and for not asking for a curative instruction or a correct account of the misstated evidentiary facts.

(Doc. 2, ECF p. 6.)  In their response to the petition, Respondents contend the following: (1) Mr. Williams' claim of judicial misconduct should be dismissed based on Mr. Williams' failure to exhaust, and (2) Mr. Williams' exhausted ineffective assistance of counsel claim should be denied on the merits.  For purposes of discussion, the court will first discuss exhaustion and procedural default as to Mr. Williams' Claim One, followed by a discussion of the ineffective assistance of counsel claim set forth in Claim Two.

### A.    Claim One - Judicial Misconduct

As stated above, Respondents contend that Mr. Williams' Claim One relating to judicial misconduct has not been presented to the state courts, and therefore this court should decline to review it on the basis that it has not been exhausted.  Thus, the court must determine whether Mr. Williams' claim has been adequately exhausted in the state courts and, if not, whether the circumstances of his case are sufficient to excuse his procedural default.

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking

federal habeas corpus relief.[2]  To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review.  *See, e.g.*, *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 1060, 103 L.Ed.2d 380 (1989); *Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir. 1996), *abrogated on other grounds by Beard v. Kindler*, 558 U.S. 53, 130 S.Ct. 612, 175 L.Ed.2d 417 (2009); *Burkett v. Love*, 89 F.3d 135, 137 (3d Cir. 1996).  Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court, and highest court before exhaustion will be considered satisfied.[3]  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999).  The petitioner has the burden of establishing that the exhaustion requirement has been met.  *Ross v. Petsock*, 868 F.2d 639, 643 (3d Cir. 1999);

---

[2]  28 U.S.C. § 2254(b)(1) provides the following:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –

> (A) the applicant has exhausted the remedies available in the courts of the State; or
> (B)(i) there is an absence of available State corrective process; or
> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

[3]  Pursuant to Pennsylvania Supreme Court Order 218, effective May 9, 2000, issues presented to the Pennsylvania Superior Court are considered exhausted for the purpose of federal habeas corpus relief under section 2254.  *See In re: Exhaustion of States Remedies in Criminal and Post-Conviction Relief Cases*, No. 218, Judicial Administration Docket No. 1 (May 5, 2000) (per curiam).

*O'Halloran v. Ryan*, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, federal courts may review the merits of a state petitioner's claim prior to exhaustion when no appropriate state remedy exists. *Christy v. Horn*, 115 F.3d 201, 206 (3d Cir. 1997); *Doctor*, 96 F.3d at 681; *Carter v. Vaughn*, 62 F.3d 591, 594 (3d Cir. 1995). Nevertheless, a petitioner shall not be deemed to have exhausted state remedies if he has the right to raise his claims by any available state procedure. 28 U.S.C. § 2254(c).

Turning to procedural default, if a petitioner presents unexhausted habeas claims to a federal court, but state procedural rules bar further state court review, the federal court will excuse the failure to exhaust and treat the claims as exhausted. *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir. 2001); *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane*, 489 U.S. 288, 297-98, 109 S.Ct. 1060, 1068, 103 L.Ed.2d 334 (1989). Although deemed exhausted, such claims are considered procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 749, 111 S.Ct. 2546, 2564, 115 L.Ed.2d 640 (1991); *Lines*, 208 F.3d at 160.

A federal habeas court cannot review the merits of procedurally defaulted claims unless the petitioner demonstrates either: (1) "cause" for the procedural default and "actual prejudice" as a result of the alleged violation of federal law; or (2) failure to consider the claims will result in a "fundamental miscarriage of justice." *See McCandless v. Vaughn*, 172 F.3d 255, 260 (3d Cir. 1999); *Coleman*, 501 U.S. at 749-50, 111 S.Ct. at 2564-65; *Caswell v. Ryan*, 953 F.2d 853, 857, 861-62 (3d

-8-

Cir. 1992).  To satisfy the first exception, a petitioner must show: (1) cause for his failure to raise his claim in state court; and (2) prejudice to his case as a result of that failure.  *Coleman*, 501 U.S. at 749-50, 111 S.Ct. at 2564-65.  To demonstrate "cause" for a procedural default, the petitioner must show that something "external" to the defense impeded the petitioner's efforts to comply with the state's procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986).  Once "cause" has been successfully demonstrated, a petitioner must then prove "prejudice."  "Prejudice" must be something that "worked to [petitioner's] actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *Id.* at 494, 106 S.Ct. at 2647.

Alternatively, a federal court may excuse a procedural default when the petitioner establishes that failure to review the claim will result in a fundamental miscarriage of justice.  *See Werts v. Vaughn*, 228 F.3d 178, 192-93 (3d Cir. 2000).  A credible allegation of "actual innocence" constitutes a "miscarriage of justice" that enables a federal court to hear the merits of otherwise procedurally defaulted habeas claims.  *Hubbard v. Pinchak*, 378 F.3d 333, 338 (3d Cir. 2004).  The fundamental miscarriage of justice exception, as defined by the United States Supreme Court, is confined to cases of actual innocence as compared to legal innocence, where the petitioner can show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in light of new evidence.  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995).  "To be credible," a claim of actual innocence must be based on reliable

evidence not presented at trial. *Id*. at 324, 115 S.Ct. at 865.

In the instant case, Mr. Williams does not dispute that Claim One is unexhausted. (*See* Doc. 3.) The time to present this claim has passed for purposes of direct appellate review. Further, because it appears that any subsequent PCRA petition filed by Mr. Williams would be untimely, *see* 42 PA. CONS. STAT. ANN. § 9545(b) (petition must be filed within one year of the date judgment becomes final), this issue is procedurally defaulted. Therefore, the court will now address whether Mr. Williams has demonstrated either cause and actual prejudice, or a fundamental miscarriage of justice, so as to excuse procedural default of this issue. *See McCandless*, 172 F.3d at 260.

In his petition, Mr. Williams asserts only that he "wished to raise judicial misconduct on post-conviction but PCRA counsel refused to include the issue after said counsel promised to do so. By the time [Mr. Williams] was made aware of said counsel's actions it was to[o] late." (Doc. 1, ECF p. 9.) In his supporting memorandum of law, Mr. Williams provides no further argument regarding procedural default of this Claim One. (*See* Doc. 2.) However, attached to Mr. Williams' motion to stay is correspondence between Mr. Williams and Elizabeth Hoffman, Esquire, PCRA counsel who was appointed after the Superior Court vacated the earlier PCRA court order on March 13, 2007, and remanded Mr. Williams' matter for further proceedings. (*See* Doc. 3-2, Ex. A; Doc. 3-3, Ex. B.) This correspondence reveals that Mr. Williams received a copy of the supplemental PCRA petition his counsel filed on his behalf, a PCRA petition that did not include

the judicial misconduct claim.  (Doc. 3-3, ECF p. 6.)  Once Mr. Williams read that

PCRA petition, he was on notice that Attorney Hoffman had not raised this claim.

Although he could have raised his concern for Attorney Hoffman's omission of this

claim from his PCRA petition on appeal before the Superior Court, he did not do so.

Further, Mr. Williams does not state any reason for not raising this issue earlier than

in his present habeas corpus proceedings.  If Mr. Williams was dissatisfied with

Attorney Hoffman's representation, or her failure to raise this claim in his PCRA

petition, he could have taken immediate action in the state courts to remedy the

problem.[4]  Yet Mr. Williams did not do so, either before the PCRA court or on appeal

to the Pennsylvania Superior Court.  As a result, the court finds that Mr. Williams

has failed to show cause for why he did not raise this claim in the state courts.  In

the absence of cause, the court will not address the issue of prejudice.  *See Smith*

*v. Murray*, 477 U.S. 527, 533, 106 S.Ct. 2661, 2666, 91 L.Ed.2d 2661 (1986).

Moreover, because Mr. Williams has not alleged that he is actually innocent, or has

presented any colorable evidence of his actual innocence, he has not demonstrated

that a fundamental miscarriage of justice will result from failure to review this claim.

*Schlup*, 513 U.S. at 327, 115 S.Ct. at 867.  Habeas relief on this ground will be

denied.

---

[4] As the court pointed out in the order denying Mr. Williams' motion to stay,

> We note the procedural history of Mr. Williams' PCRA pursuits demonstrates
> that he is capable of filing a *pro se* appeal to the Superior Court.  After his first
> PCRA counsel filed a "no merit" letter, and the trial court dismissed his PCRA,
> Mr. Williams successfully appealed that decision to the Superior Court of
> Pennsylvania which resulted in the appointment of new PCRA counsel, Attorney
> Hoffman, and the right to file a supplemental PCRA petition.  (Doc. 1, Pet.)

(Doc. 14, ECF p. 2, n. 2.)

**B.      Claim Two -  Ineffective Assistance of Counsel**

Mr. Williams claims that his trial counsel rendered constitutionally ineffective

assistance in failing to object to, or seek a curative instruction for, the trial court's

improper jury charge.  As Respondents do not dispute that this claim has been

exhausted, (*see* Doc. 15-3, ECF p. 6), the court will address it on the merits.

The scope of this court's review on the merits of the issues presented in a

Section 2254 habeas petition is set forth in 28 U.S.C. § 2254(d).  That section

states, in relevant part, that exhausted claims that have been adjudicated on the

merits by the state courts are subject to review under the standard of whether they

are "contrary to, or involved an unreasonable application of, clearly established

Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. §

2254(d)(1), or "resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented in the State court

proceeding," 28 U.S.C. § 2254(d)(2).  AEDPA places the burden on the petitioner to

make this showing. *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d

389 (2000).

The "contrary to" and "unreasonable application" clauses of Section

2254(d)(1) have independent meaning. *Bell v. Cone*, 535 U.S. 685, 693-94, 122

S.Ct. 1843, 1849-50, 152 L.Ed.2d 914 (2002).  A state court judgment is "contrary

to" federal law when it is "diametrically different, opposite in character or nature, or

mutually opposed" to "clearly established" decisions of the United States Supreme

Court. *Williams*, 529 U.S. at 405, 120 S.Ct. at 1519.  This may occur if "the state

court ignores or misapprehends clear precedent or it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" *Wilkerson v. Klem*, 412 F.3d 449, 452 (3d Cir. 2005) (quoting *Williams*, 529 U.S. at 406, 120 S.Ct. at 1519-20).  Alternatively, "[a]n 'unreasonable application' occurs when a state court 'identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Rompilla v. Beard*, 545 U.S. 374, 380, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005) (quoting *Wiggins v. Smith*, 539 U.S. 510, 519-520, 123 S.Ct. 2527, 2534-35, 156 L.Ed.2d 471 (2003)).  For purposes of Section 2254(d)(1), "[i]t is not enough that a federal habeas court, in its independent review of the legal question, is left with a firm conviction that the state court was erroneous." *Lockyer v. Andrade*, 538 U.S. 63, 75, 123 S.Ct. 1166, 1175, 155 L.Ed.2d 144 (2003) (internal citations omitted).  "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 75-76, 123 S.Ct. at 1175. (quoting *Williams*, 529 U.S. at 411, 120 S.Ct. at 1522).  Rather, "[t]he state court's application of clearly established law must be objectively unreasonable" before a federal court may grant the writ.  *Andrade*, 538 U.S. at 75, 123 S.Ct. at 1174.

Turning to Section 2254(d)(2), as well as the related Section 2254(e), the test for the "unreasonable determination of facts" clause is whether the petitioner has

demonstrated by "clear and convincing evidence," § 2254(e)(1), that the state

court's determination of the facts was unreasonable in light of the record. *Rountree*

*v. Balicki*, 640 F.3d 530, 537-38 (3d Cir. 2011) (citing *Rice v. Collins*, 546 U.S. 333,

338-339, 126 S. Ct. 969, 974, 163 L.Ed. 2d 824 (2006) ("State-court factual findings,

moreover, are presumed correct; the petitioner has the burden of rebutting the

presumption by 'clear and convincing evidence.'") (quoting § 2254(e)(1)) (citing

*Miller-El v. Dretke*, 545 U.S. 231, 240, 125 S. Ct. 2317, 2325, 162 L.Ed. 2d 196

(2005)); *see also Simmons v. Beard*, 590 F.3d 223, 231 (3d. Cir. 2009) ("Under the

§ 2254 standard, a district court is bound to presume that the state court's factual

findings are correct, with the burden on the petitioner to rebut those findings by clear

and convincing evidence."). Further, as with Section 2254(d)(1), the evidence

against which a federal court measures the reasonableness of the state court's

factual findings is the record evidence at the time of the state court's adjudication.

*Rountree*, 640 F.3d at 538 (citing *Cullen v. Pinholster*, ____ U.S. ____, ____, 131

S.Ct. 1388, 1401-1403, 179 L.Ed.2d 557 (2011)).

      Finally, AEDPA scrutiny is applicable only if the state court adjudicated the

petitioner's claims "on the merits." 28 U.S.C. § 2254(d); *see Appel v. Horn*, 250

F.3d 203, 210 (3d Cir. 2001). "An 'adjudication on the merits' has a well settled

meaning: a decision finally resolving the parties' claims, with res judicata effect, that

is based on the substance of the claim advanced, rather than on a procedural, or

other, ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir. 2004), *rev'd on other*

*grounds, Rompilla v. Beard*, 545 U.S. 374 (2005) (quoting *Sellan v. Kuhlman*, 261

F.3d 303, 312 (2d Cir. 2001)).  Further, an "adjudication on the merits" can occur at

any level of state court.  *Thomas v. Horn*, 570 F.3d 105, 115 (3d Cir. 2009).

However, "to qualify as an 'adjudication on the merits,' the state court decision must

finally resolve the claim.  This means that the state court's resolution of the claim

must have preclusive effect."  *Id.* (citing *Rompilla*, 355 F.3d at 247 (quoting *Sellan*,

261 F.3d at 311)).  Where a state court has not reached the merits of a claim

thereafter presented to a federal habeas court, the deferential AEDPA standards do

not apply, and the federal court must exercise *de novo* review over pure legal

questions and mixed questions of law and fact.  *Simmons v. Beard*, 581 F.3d 158,

165 (3d Cir. 2009) (citing *Appel*, 250 F.3d at 210).  However, the state court's factual

determinations are still presumed to be correct, rebuttable upon a showing of clear

and convincing evidence.[5]  *Simmons*, 581 F.3d at 165 (citing *Appel*, 150 F.3d at

210).

Turning to a claim of ineffective assistance of counsel, to establish such a

claim, Mr. Williams first "must show counsel's performance was deficient," meaning

"counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed by the Sixth Amendment."  *Strickland v. Washington*, 466 U.S. 668, 687,

104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).  Second, he must show "the deficient

performance prejudiced the defense," meaning counsel's "errors were so serious as

to deprive the defendant of a fair trial."  *Id.*  To meet this prong, Mr. Williams must

---

[5] In fact, "the § 2254(e)(1) presumption of correctness applies regardless of whether there has been an 'adjudication on the merits' for purposes of § 2254(d)."  *Thomas*, 570 F.3d at 116 (quoting *Nara v. Frank*, 488 F.3d 187, 200-01 (3d Cir. 2007)).

demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694, 104 S.Ct. at 2068.  This is an objective inquiry. *Breakiron v. Horn*, 642 F.3d 126, 145 (3d Cir. 2011).  "Unless a defendant makes both showings, it cannot be said that the conviction or . . . sentence resulted from a breakdown in the adversary process that renders the result unreliable."[6]  *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

In this case, Mr. Williams contends that his trial counsel rendered ineffective assistance when he failed to object to certain remarks made by the trial court in its charge to the jury.  Specifically, in its portion of the charge regarding how to address inconsistencies in witness testimony, the trial court seemingly gave the jury its own version of the facts presented at trial, including a recollection of witnesses and their testimony.  (Doc. 15-7, ECF p. 46-54, Ex. B, Notes of Testimony (NT), 10/11/2002 Charge of the Ct.)  Specifically, when recalling Officer Muldrew's testimony, the trial court stated that Muldrew "saw an exchange" between Mr. Williams and Richardson, suggesting a conspiracy.  (Doc. 15-7, ECF p. 48.)  The trial court also commented on the accuracy of Richardson's testimony, stating, "With testimony of somebody like that, you basically have three options: You accept it all, you reject it all, or you

---

[6] Pennsylvania applies the same test for ineffective assistance of counsel as the federal courts. *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000).  In Pennsylvania, the ineffective assistance of counsel standard requires the petitioner to "rebut the presumption of professional competence" by demonstrating: "(1) his underlying claim is of arguable merit; (2) the particular course of conduct pursued by counsel did not have some reasonable basis designed to effectuate his interest; and (3) but for counsel's ineffectiveness, there is a reasonable probability that the outcome of the proceedings would have been different." *Commonwealth v. Sneed*, 899 A.2d 1067, 1076 (Pa. 2006).  If the petitioner fails to satisfy any of the standard's prongs, the claim will be rejected. *Id.*

accept some parts and you reject other parts.  There's an old principle of law which says, False in one, false in all."  (*Id*., ECF p. 50.)  Also, when the trial court charged the jury on the elements of criminal conspiracy, it used the facts of Mr. Williams' case as examples for various scenarios establishing criminal conspiracy.  (*Id*., ECF pp. 52-53.)  The court then stated,

> You heard, of course, that Richardson was in front of a judge of this court and pleaded guilty to these same crimes, to the delivery and to criminal conspiracy, and he pleaded guilty to criminal conspiracy with Williams to deliver this controlled substance when he stood in front of Judge Evans.  That's what he told the judge he did.
>
> He said, I delivered that cocaine, and not only did I deliver it, but I did it in conspiracy with this person, he told you from the witness stand, but that's really not what happened.
>
> I don't know how he put it on his Public Defender, but he said, I didn't do that.
>
> Well, he told the judge he did, and he pleaded guilty to it. So, as I say, with Richardson's testimony throughout, you have to decide what part you're going to accept and what part you're going to reject and how you reconcile all of his testimony from what Officer Muldrew told you as the officer who was right there on the scene.

(*Id*., ECF pp. 53-54.)  After the trial court completed this section of the charge, the prosecutor explained to the trial court and jury that when Richardson pleaded guilty to criminal conspiracy in a separate proceeding, he did not, in fact, identify Mr. Williams as the person with whom he had conspired.  (*Id*., ECF pp. 54-55.)  For his part, Mr. Williams' counsel did not object to this portion of the charge, but did provide further explanation as to Richardson's guilty plea.  (*Id*., ECF pp. 55-56.) After this discussion regarding the remarks in question in the jury charge, the trial

court provided further instruction as to the jury's role in reviewing the facts of the

case, which included the following:

> As I've indicated to you, you are the judges of the facts.
> Although I have reviewed the facts in some small detail
> here to illustrate my legal point, should I have said anything
> in the facts which differs from your own recollection, then,
> by all means, it is your recollection of the facts that controls
> because you are the sole and exclusive judges of the
> fact[s].

(*Id.*, ECF p. 57.)

In its April 23, 2009 memorandum addressing Mr. Williams' appeal from the

denial of his PCRA petition, the Pennsylvania Superior Court addressed the merits

of this claim and concluded that, although there was arguable merit to his claim that

the trial court abused its discretion in its charge to the jury and that Mr. Williams' trial

counsel had no reasonable strategic basis for failing to object to the improper

charge, Mr. Williams failed to establish that there was a reasonable probability that

the outcome of the proceedings would have been different had counsel objected to

the instructions.  (Doc. 15-9, ECF pp. 9-10, Ex. E, *Commonwealth v. Williams*, 1119

MDA 2008 (Pa. Super. Ct. Apr. 23, 2009)).  In its discussion, the court concluded, in

particular:

> Specifically, we agree with this Court's determination on
> direct appeal that the Commonwealth had presented at
> Williams' trial sufficient circumstantial evidence to support
> his convictions on all of the above-described crimes.  This
> Court cited the following circumstantial evidence in support
> of its determination that the Commonwealth presented
> sufficient evidence to sustain every element of the charged
> offenses beyond a reasonable doubt:
>
> Muldrew testified to the following: (1) he saw the meeting
> between Richardson and Williams; (2) he saw a "slight

-18-

exchange of hands" between the two[,] which he believed to be a drug transaction in his professional opinion; and (3) he tried to pay Williams but Williams nodded his head toward Richardson. N.T., 10/11/02, at 18. Williams does not dispute this testimony. Additionally, there is no evidence to suggest Richardson made contact with anyone but Williams during this period.

*Williams*, 858 A.2d 1284 (unpublished memorandum at 6). We concluded that "[b]ased on the foregoing, the evidence was sufficient to support the proposition that Williams furnished Richardson with the crack cocaine, knowing that Richardson would sell it to Officer Muldrew." *Id*.

As aforementioned, we may dispose of an appellant's ineffectiveness assistance claim solely on the basis of his or her failure to meet the prejudice prong. *See* [*Commonwealth* v. *Travaglia*, 661 A.2d 352, 357 (Pa. 1995)]. Although the trial court here may have abused its discretion by commenting during its jury charge on matters not supported by the evidence introduced at trial, we cannot conclude that had Williams' trial counsel objected to the improper statement, there is a reasonable probability that the outcome of the proceedings would have been different. Accordingly, we conclude that Williams' trial counsel was not ineffective for failing to object to the trial court's jury charge.

(*Id*., ECF pp. 8-11.)

Upon review, this court finds that the Superior Court's decision on this issue is neither contrary to, nor an unreasonable application of, *Strickland*. Again, the state court found that, although the trial court may have abused its discretion during its jury charge when it made comments not supported by the evidence and trial counsel had no reasonable basis for not objecting to these comments, because the Commonwealth presented sufficient evidence to sustain the charged offenses beyond a reasonable doubt, Mr. Williams did not establish the prejudice prong of the *Strickland* standard. The court agrees with the state court's finding that trial counsel

had no reasonable strategic basis for failing to object to the improper charge, and therefore Mr. Williams has satisfied the deficient performance prong of *Strickland*. Despite this, the court must consider the strength of the evidence in assessing whether Mr. Williams can demonstrate prejudice under *Strickland*.  *See Albrecht v. Horn*, 485 F.3d 103, 128-29 (3d Cir. 2007) (quoting *Buehl v. Vaughn*, 166 F.3d 163, 172 (3d Cir. 1999) ("[i]t is firmly established that a court must consider the strength of the evidence in deciding whether the Strickland prejudice prong has been satisfied.")).  Considering the entire record, including, *inter alia*, Officer Muldrew's credible testimony on his interaction with Mr. Williams and Richardson, there was significant evidence supporting the charges against Mr. Williams presented at trial, which affirms the court's confidence in the jury's verdict.  Therefore, Mr. Williams cannot demonstrate that he suffered prejudice when his trial counsel failed to object to the trial court's improper comments during the jury charge.  Habeas relief on this ground will be denied.


**IV.    Conclusion**

Based on the foregoing determination that Mr. Williams' claims are procedurally defaulted or without merit, the court will deny the petition for writ of habeas corpus.  (Doc. 1.)

The court must now determine whether a certificate of appealability should issue.  A court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. §

2253(c)(2).  This requires that the petitioner "demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000).  Here, the court denies a certificate of appealability because jurists of reason would not find it debatable that denial of the petition based on findings of procedural default and lack of merit of Mr. Williams' claims is correct.

An appropriate Order follows.

/s/ A. Richard Caputo
**A. RICHARD CAPUTO**
**United States District Judge**

**Date:  JUNE 23, 2014**

-21-